**TARTER KRINSKY & DROGIN LLP**
David J. Pfeffer
Simon I. Malinowski
1350 Broadway
New York, New York 10018
Tel.: (212) 216-8000
Facsimile: (212) 216-8001
Email: dpfeffer@tarterkrinsky.com
Email: smalinowski@tarterkrinsky.com

*Attorneys for Plaintiff, Christopher LaCroix*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER LaCROIX, <br><br> Plaintiff, <br><br> -against- <br><br> STEVEN WINDWER and NICHOLAS WINDWER, <br><br> Defendants, <br><br> -and- <br><br> FRIEDBERG PINKAS PLLC, as Escrow Agent, <br><br> Nominal Defendant. | Civil Action No.: 20-cv-6104 <br><br> **VERIFIED COMPLAINT** |

Plaintiff Christopher LaCroix ("Plaintiff"), by and through his attorneys, Tarter Krinsky & Drogin LLP, as and for his Complaint against Defendants Steven Windwer and Nicholas Windwer ("Defendants"), alleges and states as follows:

**NATURE OF THE ACTION**

1. This action seeks a declaratory judgment whereby it is judicially determined that: (a) Defendants breached the contract of sale dated February 20, 2020 (the "Contract") by and between Plaintiff and Defendants for the sale of 25 Charles Street, Apt. 2B, New York, New York

(the "Apartment"); and (b) Nominal Defendant Friedberg Pinkas PLLC, as Escrow Agent (the "Escrow Agent") is ordered to release the Contract deposit of $170,000 (the "Deposit") to Plaintiff.

2. Subsequent to executing the Contract, Defendants twice attempted to terminate the Contract on COVID-19 based grounds that were devoid of any factual or legal merit.

3. Defendants executed the Contract on February 20, 2020, at which time the COVID-19 pandemic and its potential spread to New York was already the subject of mainstream media coverage.

4. It is clear that Defendants decided they no longer wanted to purchase the Apartment and attempted to concoct a reason to terminate the Contract.

5. Despite unequivocally breaching the Contract, Defendants are nevertheless unlawfully seeking a return of the Deposit.

6. Put simply, buyer's remorse is not grounds for termination of the Contract.

## THE PARTIES

7. Plaintiff was and is a natural person residing at 25 Charles Street, Apt. 2B, New York, New York 10014.

8. Upon information and belief, Defendant Steven Windwer is a natural person and a resident of the State of Massachusetts.

9. Upon information and belief, Defendant Nicholas Windwer is a natural person and a resident of the State of Massachusetts.

10. Nominal Defendant Friedberg Pinkas PLLC is a New York professional limited liability company with its principal place of business at 767 Third Avenue, 31st Floor, New York, New York 10017.

## JURISDICTION AND VENUE

11. Defendants are subject to personal jurisdiction in this Court pursuant to New York Civil Practice Law and Rules 301 and 302 because (a) this action arises out of a contract to purchase real property in the State of New York; and (b) Defendants agreed that "any action or proceeding out of this Contract shall be brought in the … Federal District in which the unit is located and the Parties hereby consent to said venue."

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on the complete diversity of Plaintiff and Defendants and because the amount in controversy exceeds $75,000.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events at issue in this action occurred in this judicial district and the property that is the subject of this action is situated in this judicial district.

## STATEMENT OF FACTS

**The Contract**

14. Plaintiff and Defendants entered into the Contract whereby Plaintiff agreed to sell, and Defendants agreed to purchase, 600 shares of the 25 Charles Street Owners Corporation (the "Coop") allocated to the Apartment.

15. The Contract's purchase price was $1,700,000.

16. The Deposit was $170,000.

17. The Deposit is being held by the Escrow Agent pursuant to the Contract.

18. The Contract provided a closing date of "on or about April 15, 2020 at 1:00 p.m."

**Plaintiff's Attempts to Schedule a Closing**

19. On March 26, 2020, Defendants' counsel sent an email to Plaintiff's counsel and advised that Defendants "would like to ask [plaintiff] if [plaintiff] would be willing to let [Defendants] out of the contract because of COVID-19."

20. On March 26, 2020, Plaintiff's counsel responded and advised that "the board package was due on March 5, 2020.  As of today's date it has not been submitted according to my client's broker (who has been following up and requesting it diligently for over 3 week).  Further, using coronavirus as an excuse for not having submitted the package is irrelevant as the entire city was still 100% up and running at that time."

21. Plaintiff's counsel further advised that "[i]t seems very odd that your clients are asking for a termination of the contract when they have not proceeded in good faith and are technically in default of paragraph 6 of the Contract.  My client has in good faith withheld me from sending a default notice."

22. On April 24, 2020, Plaintiff's counsel sent Defendants' counsel another email requesting a response to his May 26, 2020 email and advised that "[Defendants] continue to be in default of the contract with respect to submission of the board package.  While they did submit a partial board package after I had emailed you below it was insufficient and incomplete, accordingly, they have still not complied with the contract provisions regarding timing of submission of the package."

23. On April 24, 2020, in response to Plaintiff's counsel's email, Defendants' counsel advised that "Purchaser submitted the necessary documents for the board application.  It was the board that requested additional documents with respect to Nick who, as you recall, was removed as a purchaser."

24. On May 22, 2020, Plaintiff's counsel advised that Defendants were approved by the Coop's Board of Directors (the "Coop Board") and requested that Defendants provide potential closing dates for "late June."

25. On May 26, 2020, Plaintiff's counsel sent another email regarding a potential closing date.

26. On May 29, 2020, Defendants' counsel advised that a date would be provided "as soon as I hear from my client."

**The Time of the Essence Notice**

27. On June 9, 2020, Plaintiff sent a time of the essence notice pursuant to the Contract's notice provisions (the "TOE Notice").

28. The TOE Notice provided as follows:

> The closing for the above referenced transaction was scheduled for on or about April 15, 2020. I have reached out to you four (4) times in the past two (2) weeks to schedule the closing. On three (3) occasions, you failed to respond entirely and on the fourth (4th), you apologized for being delayed due to the holiday weekend and indicated that you would get back to me with date. Such apology was made over ten (10) days ago and you have yet to provide a date.

29. The TOE Notice designated a Time of the Essence closing date of Friday, July 10, 2020 at 11:00 a.m. (the "TOE Closing Date") with the closing to take place either at the offices of the Andrew Organization, 666 Broadway, 12th Floor, New York, New York 10012 or virtually by Zoom, Federal Express and wire.

30. The TOE Notice also advised that Defendants' failure to appear ready, willing and able to close on the TOE Closing Date "will be deemed a material default under said Contract and Seller will avail themselves of all legal remedies available at to Seller, including but not limited to retaining the Contract Deposit."

**Defendants' Purported Cancellation of the Contract**

31. On June 16, 2020, Defendants sent a letter to Plaintiff purporting to terminate the Contract based on the legal doctrines of frustration of purpose and failure of consideration, and based on an allegation of "possible" interference with the Coop Board's approval process ("Defendants' Purported Cancellation Notice").

32. On June 23, 2020, Plaintiff sent a letter in response to Defendants' Purported Cancellation Notice and advised the Defendants' attempt to terminate the Contract was rejected as devoid of any factual or legal merit ("Plaintiff's Rejection Letter").

33. In Plaintiff's Rejection Letter, Plaintiff advised that Defendants did not have any legal grounds for terminating the Contract and rejected the legal arguments proffered in Defendants' Purported Cancellation Notice.

34. First, Defendants' attempt to terminate the Contract based on the doctrine frustration of purpose was without basis. The doctrine of frustration of purpose requires that "the frustrated purpose must be so completely the basis of the contract, as both parties understood, without it, the transaction would make little sense." *Crown IT Services, Inc. v. Koval-Olsen*, 11 A.D.3d 263, 265 (1st Dept. 2004). The doctrine is not available where the event which allegedly prevented performance was foreseeable and provision could have been made for its occurrence. Here, the purpose of the Contract was Defendants' purchase of the Apartment pursuant to the terms of the Contract. COVID-19 did not frustrate the purpose of the Contract: upon closing, the Apartment would be transferred to Defendants.

35. Second, Defendants' attempt to terminate the Contract based on the doctrine of failure of consideration was also without merit. The mere allegation that the Apartment had depreciated in value did not provide a basis for terminating the Contract. Failure of consideration

6

requires that reciprocal performance is rendered valueless by an unforeseen event. Defendants cannot credibly claim that the Apartment has been rendered "valueless." Furthermore, the COVID-19 pandemic and its potential spread to New York was already the subject of mainstream media coverage when Defendants executed the Contract. Defendants also completed the Board approval process during the height of the COVID-19 pandemic in New York.

36. Plaintiff further advised that Defendants' allegation that Plaintiff had "possibly" interfered in the Coop Board's approval process was unequivocally false and noted that such allegation could not be true given that Defendants were approved by the Coop Board.

37. Plaintiff reiterated that Plaintiff "will proceed with the TOE Closing date as designated in [Plaintiff's] Time of the Essence notice dated June 9, 2020."

38. On July 10, 2020, Defendants sent a letter to Plaintiff wherein Defendants advised that "Purchaser does not intend and will not close on July 10, 2020. Purchaser hereby also objects to the release of the Contract Deposit to Seller. As such, in accordance with Section 27.1 of the Contract, Escrowee may not release the Contract Deposit to Seller."

**Defendants' Default**

39. On July 10, 2020 at 11:00 a.m., Plaintiff appeared for and held a closing pursuant to the TOE Notice, at which time Tracie Shand of Veritext Legal Solutions attended, took attendance and confirmed that Plaintiff was ready, willing and able to close and that Defendants failed to appear for the closing.

40. On July 13, 2020, Plaintiff sent a letter to Defendants, Defendants' counsel and the Escrow Agent and advised that: (a) Defendants breached the Contract by failing to close on the TOE Closing Date, at which time Plaintiff appeared and was ready, willing and able to close; and

7

(b) Plaintiff demanded that the Escrow Agent release the Deposit as liquidated damages pursuant to Section 13.1, Article 17 and Section 27.1 of the Contract.

41. On July 16, 2020, Defendants sent a letter to Plaintiff and the Escrow Agent objecting to Plaintiff's demand to the Escrow Agent to release the Deposit to Plaintiff.

## **COUNT I**
### **(Breach of Contract - Declaratory Judgment)**

42. Plaintiff restates and realleges each and every allegation in the foregoing paragraphs as if the same were set forth herein.

43. The Contract constitutes a valid and binding contract upon Plaintiff and Defendants.

44. Defendants have wrongfully refused to perform pursuant to the Contract by seeking to terminate the Contract without any valid basis, for refusing to appear at the TOE Closing Date and for failing to pay the balance of $1,530,000 of the purchase price to Plaintiff.

45. Defendants' improper repudiation, purported termination and refusal to perform each constitute a breach of the Contract by Defendants.

46. Plaintiff has duly performed all of the conditions on his part to be performed under the Contract.

47. Section 13.1 of the Contract specifically addresses the consequence of Defendants defaulting under the Contract – the Deposit must be released to Plaintiff as liquidated damages.

48. As such, Plaintiff seeks a judgement ordering the Escrow Agent to release the $170,000 Deposit to Plaintiff.

**WHEREFORE**, Plaintiff Christopher LaCroix demands judgment as follows:

A. A judgment declaring that Defendants breached the Contract and ordering the Escrow Agent, Friedberg Pinkas PLLC, to release the $170,000 Deposit to Plaintiff;

8

B.      An award of costs and disbursements of this action; and

C.      Such other and further relief as this Court deems just and proper.

Dated: New York, New York
July 31, 2020

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Plaintiff, Christopher LaCroix*

By: _____
David J. Pfeffer
Simon I. Malinowski
1350 Broadway
New York, New York 10018
Tel.: (212) 216-8000
Facsimile: (212) 216-8001
Email: dpfeffer@tarterkrinsky.com
Email: smalinowski@tarterkrinsky.com

## VERIFICATION

STATE OF NEW YORK )
)ss:
COUNTY OF NEW YORK )

Christopher LaCroix, being duly sworn, states under penalty of perjury:

I am the plaintiff in the above-captioned action. I have read the foregoing Verified Complaint, know the contents thereof and the same are true to my knowledge, except those matters that are alleged on information and belief. As to those matters alleged on information and belief, I believe them to be true based upon my inspection of records which are in my custody and control, publicly available information and my familiarity with the parties involved.

Christopher LaCroix

Sworn to before me this
03 day of ~~July,~~ 2020
August

NOTARY PUBLIC

ERWIN ANTIGUA SANTANA
Notary Public - State of New York
No. 01AN6399012
Qualified in Bronx County
My Commission Expires Oct. 15, 2023